UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 25-CR-162

LAWRENCE J. CHASE,

Defendant.

---

**DEFENDANT'S SENTENCING MEMORANDUM**

---

Lawrence J. Chase, by counsel, hereby submits this sentencing memorandum in support of a sentence for the mandatory minimum permitted under the law, 15 years (180 months). At paragraph 21 of the plea agreement, the government also agrees to recommend the mandatory minimum sentence of 15 years (180 months), thereby making this a joint recommendation. *See also* PSR @ ¶ 10. In a case like this, there are many reasons to argue as to why the mandatory minimum is too high, especially if one were to focus solely on Chase and his youth. However, Chase is being sentenced for what he did and it is serious, enough so that Congress determined that 180 months is the lowest sentence the court can impose, that is what Chase is requesting, and the government joins in that

recommendation.

## I. History and Characteristics

Chase is a very young 22 years old. This is his first time in custody and now, going to prison. While he has prior encounters with the courts in Winnebago County, neither resulted in him going to prison. Chase was given a deferred prosecution agreement and then probation and eventually discharged from both in 2024. Copies of DOC logs completed during Chase's term of state supervision for these prior offenses were reviewed and provided to the probation office. Those records make clear that Chase had few friends, was socially isolated, described himself as lonely, and recommended individual counseling due to his young age and lower cognitive level.[1] While many may believe that harsher consequences, including at least some time in custody as to those prior cases may have prevented the conduct here, we will never know. What we do know is that a fifteen-year sentence for a person to go to prison for the first time for conduct that did not involve violence or even physical contact in any way, is a very, very long time.

The PSR describes Chase in terms of his upbringing. He was born in

[1] Counsel did not include attach copies of those logs because of the nature of the information contained within them as to treatment. In addition, the entire log is voluminous and would require extensive redaction as to personal identifying data. If the Court would like to review these documents, please request them from counsel and a copy of it can be filed separately under seal.

Menasha, Wisconsin and has never left. His childhood was difficult in that his mother and father split up when he was only three years old and he spent the next ten years dividing his time between his two parents. While life with his mother was good, life with his father was not. He suffered physical and mental abuse, in large part because his father was an alcoholic. *See* PSR at ¶ 62. By 14 years old, Chase stopped all visitation with his father. Chase still has negative emotions towards his father and says wants nothing to do with him. His stepfather came into Chase's life when he was 10/11 years old and for Chase, that is who he considers his father as he has been everything his father is not: supportive, both financially and emotionally, as well as present for not only him but his mother and siblings as well.

Chase did not have an easy time in school either. He struggled in many subjects and attended special education classes. He had an IEP throughout his years of school, the specifics of which are documented in the PSR at paragraph 59. He had few friends and frequently used video games and chatting online to obtain some sort of social interaction with others. The offense, in large part, was due to his loneliness and boredom. It involved him reaching out to others, all living in different states, trying to establish friendships and relationships with them. There is absolutely no indication that Chase intended to have in person contact with

these individuals that he was conversing with and requesting pictures of. While it does not change the legal ramifications of what he did, it certainly is important to keep in mind in terms of his sentence and the concern for his dangerousness as towards others.

From a mental health perspective, Chase has also had struggles. Chase was diagnosed with ADHD and was prescribed medication to treat neurodevelopmental symptoms from a young age until he was 18 years old. At 18 years old, his mother's insurance no longer covered his ADHD medications, and being unable to afford the prescription on his own, he was no longer taking it. Unfortunately, Chase began using marijuana, indicating that he liked the way it made him feel and he felt that it helped manage his ADHD. Chase also explained that he had contemplated suicide in the past. Paragraph 61 of the PSR provides details as to those thoughts/attempts, noting his most recent attempt was after his father told him to kill himself. That was the last conversation he had with his father. While Chase has attended group counseling at REACH for sex offender treatment, see PSR at ¶ 64, Chase wants to pursue individual mental health counseling to deal with the trauma he experienced as a child brought on by the physical and emotional abuse of his father. Chase is hopeful that wherever he is designated within the BOP, mental health counseling will be available for him.

For family and friends, it is difficult comprehending that the first time he is going to prison, it will be for 15 years, which is a very long time. Copies of letters from his family and friends are attached here. *See* Exhibit A. He will not be released until he is in his mid-30's. In addition, Chase is one of those clients considered vulnerable in terms of him going to prison. This is due to many factors to include his youth, his lower level of cognitive functioning, his offense of conviction, and him being labeled a sex offender. None of this will make his time in custody any easier. Most of the letters of support from family express the same concern for Chase's safety and well-being in prison given these vulnerabilities. Unfortunately, that is the reality of entering the BOP in Chase's situation and one hopes that the BOP will place him at an institution where there is a safe yard and other sex offenders. To try to make that happen, Chase is requesting the Court include a recommendation on his Judgment for placement at FCI-Marion. This is a medium-level security classification facility located in Illinois that offers Non-Residential Sex-Offender Treatment, a copy of the program summary is attached as Exhibit B. FCI-Marion is the closest institution to Chase's family that has this program.

II. **Offense Conduct**

As for the offense conduct, it is well documented in the PSR at paragraph 13-21. Per Chase's interview with police, in February of last year, Chase reached

out over the internet through a chat room and started a conversation with a girl who he believed was 20 years old and living in Maryland. Eventually, the girl told him she was 14 years old. Chase continued to communicate with her and engaged in sexually explicit conversations with her, as well as asking her to send sexually explicit images to him, which she did. Chase sent back sexually explicit images of himself. A total of 192 pictures and 57 videos were sent between the two, 21 photos and 20 videos of sexually explicit images sent by Chase, and 14 photos and 13 videos of sexually explicit images sent by the minor girl. All chats and images shared took place between February and March of 2025. The minor girl's father learned of her sending nude photos and videos over the internet to an adult male and contacted the police in Maryland. At that time, the police learned the girl was not 14 years old, but 11. After a brief review of the girl's cellphone, investigators found numerous correspondences with multiple individuals, two of which advised they were over the age of 18, see PSR at ¶ 14. Police identified one of the males as Chase. They then contacted the City of Menasha Police Department, who arrested Chase in August of last year.

After the arrest, Chase was brought in for interviewing. He willingly signed the Miranda waiver and indicated he would speak with law enforcement. Chase also signed a consent to search form and provided the pin code to his phone.

During the interview, Chase stated that he would join internet chat rooms to message with females. He disclosed that during February and March of 2025; he was speaking with a female who told him she was 14 years old. Chase admitted to what he did, stating that he never had physical contact with any of the girls he chatted with over the internet. All contact was through chat rooms. Chase admitted that he sent pictures of himself to her ("dick pics"), and he asked her to send nude pictures of herself. When asked by law enforcement as to whether he saved the picture, he said "no, they are for me and me only." Chase went onto state that he "…feels disgusted if he would save them and he only saves pictures of 18 and up." Chase told law enforcement that "for some reason my brains like okay if I don't save them and they are underage and I clear them off, if they are over 18, their legal." There is no evidence that Chase intended to contact anyone outside of online platforms. Chase never had in person contact with this minor girl, nor did he ever intend to. All contact was over the internet.

III. **Argument**

A sentence of fifteen years (180 months) recognizes this is a serious offense. It is only eight months lower than the bottom of the advisory guidelines applicable here. It is a significant amount of time for anyone, but especially so for someone that has never been in custody before, especially so for someone who is only 22

years old and still in the adolescent stage of brain development.

For years, it has been well documented that the adolescent brain exists from 10 to 24 years. *See* Exhibit C, Arain M, Haque M, Johal L, Mathur P, Nel W, Rais A, Sandhu R, Sharma S. *Maturation of the adolescent brain.* Neuropsychiatr Dis Treat. 2013;9:449-61. doi: 10.2147/NDT.S39776. Epub 2013 Apr 3. PMID: 23579318; PMCID: PMC3621648. More recent studies extend the adolescent brain development to age 32. *See* Exhibit D, *Scientists identify five ages of the human brain over a lifetime*, https://www.gatescambridge.org/about/news/scientists-identify-five-ages-of-the-human-brain-over-a-lifetime. Regardless of which age is used, Chase is certainly still in the adolescent brain stage. What does that mean? Exhibit C describes it in the following way:

> Molecular imaging and functional genomics studies have indicated that the brain remains in an active state of development during adolescence. In particular, magnetic resonance imaging (MRI) studies have discovered that myelinogenesis continues and the neurocircuitry remains structurally and functionally vulnerable to significant increases in sex hormones,…,which, along with environmental input, influences sex, eating, and sleeping habits. Particularly significant changes occur in the limbic system, which may impact self-control, decision making, emotions and risk-taking behaviors. The brain also experiences a surge of myelin synthesis in the frontal lobe, which is implicated in cognitive processes during adolescence.

Exhibit C, page 449. As the brain "remains under construction during

adolescence," risk-taking and novelty seeking behaviors are common, and "they are more likely to weigh positive experiences more heavily and negative experiences less so than adults." *Id.* at 450. Specifically, with regards to the frontal lobe portion of the brain, the maturation of the prefrontal cortex is still taking place. *Id.* at 453. The prefrontal cortex is responsible for executive brain functioning to include foreseeing and weighing possible consequences of behavior, inhibiting inappropriate behavior and initiating appropriate behavior, and impulse control to include delaying gratification, just to name a few. *Id.* What is clear from these studies is Chase's brain is still developing. And while that does not excuse what he did, nor impact the illegal nature of his behavior, it does help understand it. It also is an important factor to consider when imposing a sentence on someone so young and immature as Chase. While a fifteen year sentence takes Chase out of that stage of adolescent brain, the studies also are clear that aside from genetics and neuroscience, one's environment has a huge impact on a person's brain development, especially during that adolescent stage. *See generally*, Exhibit C. And while the law does not allow for less than fifteen years, these studies on brain development help to illustrate why no additional time above that for someone like Chase is warranted here.

Fifteen years serves as a deterrent to not only Chase, but the public as well.

It provides protection of the public for an extended period based on his custody status. Any additional protection will be provided during his time on supervised release, as well as the fact that he will have to register as a sex offender. Finally, Chase has acknowledged and accepted that he will be in custody for his actions. He hopes to use his time in custody in a productive way; by taking advantage of vocational training, pursuing higher education, and engaging in mental health and /or sex offender treatment. Fifteen years is the minimum time in custody allowed under the law and therefore sufficient but not greater than necessary to meet the needs of sentencing.

IV. **Restitution**

Chase requests no restitution to be ordered. Chase pled guilty to production of child pornography in violation of 18 U.S.C. § 2251(a). Paragraphs 22 and 90 of the PSR states that this offense is a child pornography trafficking offense as defined in 18 U.S.C. § 2259(c)(3). However, that is not the case. 18 U.S.C. § 2259(c)(3) defines trafficking in child pornography as conduct in violation of § 2251(d), not § 2251(a). 18 U.S.C. § 2259 limits losses proximately caused by the offense of conviction. *See United States v. Sainz*, 827 F.3d 602, (7th Cir. 2016) (*citing Paroline v. United States*, 572 U.S. 434, (2014). That means the only victim of this offense is the minor, Ms. Bowman. Those individuals identified as victims because

they have been identified as part of the Sparkling Velvet and ZooFamily1 series are not victims of the offense Chase has pleaded to. Chase is not being convicted of possessing or trafficking those images. Thus, the victim impact statements submitted are not victims of this offense and Chase requests those victim impact statements be stricken from his PSR. At this time, no restitution requests have been made by the Bowmans, therefore no restitution should be ordered. Based on the arguments above, Chase also requests that paragraphs 22, 23, 90, and 91 be stricken from the PSR.

V. **Conclusion**

Chase is asking the Court to impose the minimum mandatory sentence of fifteen years (180 months). Chase also requests no restitution ordered. Both parties are recommending that sentence and it is only eight months shy of the advisory guidelines. Chase is also requesting the Judgment include a recommendation for placement at FCI-Marion. Finally, counsel has reviewed the conditions of supervised release appearing at pages 20-26 of the PSR with Chase who has no objections to them based on the reasoning included therein. Further, Chase waives reading them in open court, understanding a full copy of them will be reviewed and provided to him when he begins his period of supervised release.

Dated at Green Bay, Wisconsin, this 27th day of January, 2026.

Respectfully Submitted,

**s/ Krista Halla-Valdes**
Krista Halla-Valdes, WI Bar #1091984
Attorney for Lawrence J. Chase
Federal Defender Services of Wisconsin, Inc.
801 E. Walnut Street, Second Floor
Green Bay, Wisconsin 54301-4401
Tel: 920-430-9900
Fax: 920-430-9901
krista_halla-valdes@fd.org

N:\CASES-OPEN\C-D\CHASE, LAWRENCE J. - 25-075\SENTENCING\SENT MEMO DRAFT5.DOCX